IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS


RONALD K. KINCHION,                    )
                                       )
                    Plaintiff,         )      CIVIL ACTION ACTION
                                       )
v.                                     )      No.  12-1203-MLB
                                       )
CESSNA AIRCRAFT COMPANY, and           )
INTERNATIONAL ASSOCIATION OF           )
MACHINISTS AND AEROSPACE WORKERS,      )
DISTRICT LODGE NO. 70, and             )
LOCAL LODGE NO. 774,                   )
                                       )
                    Defendant.         )
_____)


                    MEMORANDUM AND ORDER

        Before the court are the following:

        1. Defendant Cessna's Motion for Partial Dismissal of the
        Amended Complaint (Docs. 33, 34); Plaintiff's Response
        (Doc. 38); and Cessna's Reply (Doc. 41);

        2. Defendant Int'l. Assoc. of Machinists and Aerospace
        Workers Dist. Lodge 70 and Local No. 774 (hereinafter
        "union") Motion to Dismiss (Doc. 35); and Plaintiff's
        Response (Doc. 39); [No Reply filed] and

        3. Plaintiff's Motion for Leave to File Sur-reply (Doc.
        23) ; Plaintiff's Motion to Consolidate Defendants'
        Motions (Doc. 40).

**Background**

        Plaintiff Ronald Kinchion worked approximately 15 years at
Cessna as a small-parts finish painter.  He had a number of health
problems over that time that required medical treatment and leave. In
2011, Cessna disciplined plaintiff several times for alleged poor work
performance.  Plaintiff disputed the allegations and initiated
grievances under the machinist union's collective bargaining agreement
with Cessna. Cessna terminated plaintiff's employment on January 11,

2012.

Plaintiff subsequently filed this action against Cessna and the union. His amended complaint asserts the following claims: Count 1 - unlawful retaliation for filing a worker's compensation claim; Count 2 - breach of the collective bargaining agreement ("CBA"); Count 3 - breach of the union's duty of fair representation; Count 4 - interference with rights under the Family Medical Leave Act; Count 5 - breach of a 2008 settlement agreement between plaintiff and Cessna; and Count 6 - termination in violation of the Americans with Disabilities Act.

Both defendants now move for partial dismissal of the claims in the amended complaint.[1] Cessna contends Counts 2 and 3 relating to the CBA should be dismissed because plaintiff fails to plausibly allege that the union acted in bad faith and because plaintiff has not exhausted the CBA grievance process. The union joins in these arguments as to Count 3, the only count against it. Cessna also contends Count 5 should be dismissed because it is essentially the same as Count 1. Count 5 is based on Cessna's alleged breach of a 2008 settlement agreement in which Cessna promised to "comply with Kansas law." Plaintiff contends Cessna breached that agreement by engaging in the unlawful retaliation identified in Count 1. Cessna argues Count 5 is "entirely derivative" of Count 1 and is "duplicative and unnecessary." Finally, as to the ADA claim in Count 6, Cessna contends

---

[1] Cessna filed a motion to dismiss Counts 2,3 and 5 of the original complaint. (Doc. 13). After that motion was fully briefed, plaintiff filed an amended complaint (Doc. 28), with the only change in the complaint being the addition of Count 6. Cessna then filed a second motion to dismiss (Doc. 33) which incorporated the same arguments previously made and added a request to dismiss Count 6.

plaintiff has failed to allege sufficient facts to show he was disabled or was regarded by Cessna as having a disability.


**Motion to dismiss - Rule 12(b)(6) standard**

Under Federal Rule of Civil Procedure 8(a)(2), a pleading stating a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." But "dismissal is appropriate where 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" Iqbal, 556 U.S. at 679. Mere labels and conclusions or the formulaic recitation of the elements of a cause of action will not suffice. The factual allegations of the complaint must be enough to raise a right to relief above the speculative level. Twombly, 550 U.S. at 555.

**Facts**.

The following allegations from plaintiff's amended complaint are taken as true for purposes of defendants' motion to dismiss the claims.

Cessna is an aircraft manufacturing company with operations in Wichita, Kansas. Plaintiff was an employee of Cessna until his

termination on January 11, 2012. Their employment relationship was subject to a collective bargaining agreement between Cessna and the International Association of Machinists and Aerospace Workers, District Lodge No. 70 and Local Lodge No. 774.

Plaintiff began employment with Cessna as a small-parts finish painter in 1997. His job involved frequent, repetitive use of his hands. From 2004-2006, plaintiff was treated for an on-the-job injury under the Kansas Workers Compensation Act. The injury involved a cyst on his right wrist, carpel tunnel syndrome affecting his right wrist, thumb and two fingers, and tendinitis in his right shoulder. In 2007, plaintiff sued Cessna, claiming disability discrimination, workers compensation retaliatory discharge, and Family Medical Leave Act (FMLA) interference. That suit was dismissed when the parties entered into "the 2008 Agreement," pursuant to which Cessna promised to "comply with Kansas law in all aspects of Kinchion's continued employment with Cessna."

In late 2008, Cessna approved plaintiff's FMLA intermittent leave request for a one-year period, approving leave of one time per month with a duration of 1-2 days per episode. This was granted after plaintiff submitted a doctor's certification that he suffered from conditions including diabetes mellitus type 2, cardiac dysrhythmia, mitral valve prolapse, irritable bowel syndrome, and diabetic neuropathy. Cessna thereafter approved plaintiff's FMLA annual leave renewals. On February 1, 2011, Cessna approved plaintiff's FMLA leave request for the year 2011, granting leave with a frequency of 2-3 times per month with a duration of 1-3 days per episode.

On February 11, 2011, plaintiff filed a new on-the-job injury

-4-

claim for a new cyst on his right wrist and pain in the right trigger finger. A doctor confirmed this diagnosis, imposed work restrictions, and offered two options: cortisone injections or surgery. Plaintiff's supervisor at the time assigned him duties other than spray painting.

In July 2011, a nurse with Cessna Health Services "instructed [plaintiff] to paint with his left hand," which plaintiff apparently began doing after his doctor "capitulated to Cessna" and told plaintiff to do as Cessna instructed. Plaintiff subsequently began having problems with his left hand, thumb and fingers.

In August 2011, Crystal Simmons was assigned as plaintiff's supervisor and "immediately ... began finding fault with Plaintiff's work quality."

On August 18, 2011, plaintiff was appointed as a machinist union Shop Steward.

On August 22, 2011, Simmons gave plaintiff a written reprimand for poor work performance (paint quality). Plaintiff filed a grievance the next day, August 23, 2011.

Plaintiff had various medical restrictions in August and September 2011. On September 29, 2011, plaintiff underwent surgery on his right hand.

On September 30, 2011, Steve Elder, the second shift Plant Chair, agreed with Cessna to settle plaintiff's August 23, 2011 grievance. It was agreed that the reprimand would remain on plaintiff's record for two months and plaintiff's supervisor would arrange for plaintiff to receive additional training. Plaintiff alleges that this agreement was made without his knowledge and without consulting him.

Plaintiff returned to work on October 3, 2011 with the following restrictions: No painting with right hand; no lifting over 5# with right hand; no painting over 2.5 hours with left hand; and no lifting over 15# with left hand.

On October 6, 2011, Simmons assigned plaintiff to the priming booth and told him to spray paint with his left hand. Simmons contacted Michelle Rink, an RN in Cessna Health Services (CHS), who in turn contacted fellow CHS employee Penny Gilbert. Gilbert told plaintiff that she had just spoken with plaintiff's doctor and he had approved plaintiff painting with his right hand at 4-hour intervals. Plaintiff's wife contacted the doctor, who said he had not spoken to anyone about the matter.

On October 7, 2011, Simmons gave plaintiff a written warning regarding the paint quality of the work he had performed the previous day. Plaintiff filed a grievance over the warning on October 7, 2011. Simmons again assigned plaintiff to work in the priming booth.

On October 10, 2011, plaintiff filed a grievance against Simmons claiming that she made a promotion to crew chief in violation of the CBA terms. Plaintiff claimed that Simmons promoted a female over three males (including plaintiff) with more seniority who had expressed interest in the job and who had not been given the same crew chief training opportunities that Simmons had arranged for the female candidate.

On October 12, 2011, Simmons and the Cessna Human Resources Director suspended plaintiff for three days for work quality he had performed on October 7, 2011, claiming there were blisters and drips on the parts he painted. On October 12, 2011, plaintiff filed a

-6-

grievance over the suspension. Plaintiff contends that he and no one else had been required to paint in violation of his medical restrictions; that he and no one else had been required to paint with their non-dominant hand; and that he was singled out for discipline for paint defects, which he contends are common occurrences that are usually simply sanded and repainted.

Plaintiff returned to work on October 17, 2011. On October 26, 2011, Penny Gilbert of CHS was informed by a doctor that the hands are a target for several diabetes-related complications. These may include "trigger finger" and carpal tunnel syndrome.

From October 28, 2011 to November 28, 2011, plaintiff took an approved unpaid medical leave of absence.

On December 12, 2011, plaintiff "flame coated" some electrical junction boxes. He did one side and left the parts to cure, as was customary. Two days later another painter did the other side and left the parts to cure. Simmons and the new crew chief took the parts to a supervisor, who rejected them without knowing that the parts were not yet finished because they had not been kiln-baked. Simmons and others called plaintiff in on December 14, 2011, to write him up for the flame-coat parts. Plaintiff informed them he was not the only person to paint the parts. The next day, Simmons gave plaintiff notice of an investigation. On December 16, 2011, Simmons, plaintiff, Elder and others met for the investigation. It was determined that another painter had painted one side of the parts and they were unfinished because they had not yet been kiln-baked. These facts, according to the complaint, meant that "no discipline could be imposed on Plaintiff."

On December 21, 2011, Simmons suspended plaintiff indefinitely without pay for poor work quality, verbally alleging that plaintiff had improperly painted parts on December 20, 2011. On January 11, 2012, Cessna terminated plaintiff's employment due to the December 21st suspension. On January 13, 2012, plaintiff filed a grievance concerning his termination.

Plaintiff alleges that Steve Elder, the union Plaint Chair, made various comments to him during January and February 2012 about the status of his grievances, most of which he said were at "Step 2" of the process. On February 27, 2012, Elder informed plaintiff that Cessna had denied his grievance and he said he was sending it to Step 3.

Under the CBA, Cessna and the union agreed to settle all grievances under a four-step process, ranging from informal verbal discussion to a written complaint with investigation, hearing and replies. If a grievance remained unsettled after Step 4, it could be appealed to arbitration by either the company or the union. The CBA provides that the decision of the arbitrator "shall be final and binding upon the Company, the Union and the grievant(s) involved."[2]

On March 9, 2012, plaintiff was informed that Becky Ledbetter, a union Business Representative, still had not received the grievance files from Elder. Later in March of 2012, plaintiff was told by

---

[2] Although the CBA was not attached to the complaint, it is referred to by plaintiff and is central to his claims. Additionally, he does not challenge the accuracy of the CBA provisions cited by Cessna. The court therefore can consider the CBA without converting this to a summary judgment motion. GFF Corp. v. Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997); Munno v. Town of Orange, 391 F.Supp.2d 263, 269 (S.D.N.Y. 2005) (CBA was central to plaintiff's claims).

-8-

Ledbetter that she would be talking to Cessna's Human Resources and that "they would be getting this all taken care of." In early April Ledbetter told plaintiff that Cessna was still investigating the situation. Later in April, Ledbetter told him Cessna was now talking about plaintiff's attendance, claiming he had been given 13 verbal warnings regarding attendance. Plaintiff informed Ledbetter this was not true, pointing out that he had been on approved FMLA leave and had missed work due to an on-the-job injury for which he received an approved medical leave of absence under the union contract. Ledbetter told plaintiff "to be patient" as she addressed the allegations.

The grievance provisions of the CBA contain various time limitations. Plaintiff's allegations suggest that his grievances may not have been processed within the time limits, although the grievances are apparently still pending.[3] The CBA allows the parties to mutually agree in writing upon extensions of time in the grievance process. The pleadings are silent on whether the parties mutually agreed to extend the CBA time limits.

On May 3, 2012, plaintiff's doctor released him to return to work with lifting restrictions that were within the essential task range for his position.

Plaintiff alleges that Cessna suspended and terminated him in violation of the CBA and that it failed to comply with the CBA

---

[3] Cessna asserted in a reply brief that "since the filing of the instant lawsuit the Union and Cessna have entered into Step 4 of the grievance process" and plaintiff thus "still has an opportunity to bring his grievances before an arbitrator." (Doc. 22 at 4, n.4). Plaintiff misconstrues this as asserting that the matter was submitted to arbitration and says "Plaintiff has not been so informed," although counsel for the union allegedly told plaintiff "that arbitration was going to be filed 'soon.'" (Doc. 23-1 at 1, n.1)

procedures for discipline and grievances. He alleges that the union breached its duty to fairly represent him by failing to properly pursue the foregoing grievances.

**Counts 2 & 3 - Breach of CBA; Breach of Duty of Fair Representation**

Section 301 of the Labor Management Relations Act (LMRA) gives federal district courts jurisdiction to hear claims for breach of a collective bargaining agreement between an employer and a labor union. 29 U.S.C. § 185. Plaintiff relies on this provision in suing both Cessna for violation of the CBA (Count 2) and the machinist's union for violation of the duty of fair representation (Count 3). Each of these counts is considered a "hybrid" claim that requires the plaintiff to prove the same three elements: (1) conduct by the union that violated its duty of fair representation; (2) a causal connection showing that the union's breach affected the integrity of the arbitration/grievance process; and (3) a violation of the CBA by the employer. Webb v. ABF Freight System, Inc., 155 F.3d 1230, 1239 (10th Cir. 1998). See DelCostello v. Int'l. Broth. of Teamsters, 462 U.S. 151, 163-64 (1983); Vaca v. Sipes, 386 U.S. 171, 186 (1967).

The requirement that a plaintiff must prove the union's breach of duty in order to sue the employer is related to the CBA's grievance provisions. Because most CBAs (including this one) require exhaustion of the CBA's grievance and arbitration procedures, an employee ordinarily has to exhaust such remedies before bringing suit.[4] See

---

[4] Courts also have discretion to require exhaustion of internal union appeal procedures when those procedures can result in complete relief to the employee or reactivation of a grievance without undue delay to the employee's opportunity for a judicial hearing. Clayton

Republic Steel Corp. v. Maddox, 379 U.S. 650, 653 (1965) ("Congress has expressly approved contract grievance procedures as a preferred method for settling disputes and stabilizing the 'common law' of the plant."); Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 562-63 (1976) ("Courts are not to usurp those functions which collective-bargaining contracts have property 'entrusted to the arbitration tribunal.'").

But the exhaustion requirement is excused in some circumstances, including when the union has prevented the employee from utilizing the grievance process by breaching its duty of fair representation. Garvin v. American Tel. & Telegraph Co., 174 F.3d 1087, 1093 (10th Cir. 1999). Plaintiff alleges that he is excused from the exhaustion requirement because the union breached its duty to him by "failing to properly pursue" his grievances.

The union's duty of fair representation arises from its statutory position as exclusive bargaining representative of the employee. The duty renders the union liable for conduct that is "arbitrary, discriminatory, or in bad faith." Schwartz v. Broth. of Maint. Of Way Employees, 264 F.3d 1181, 1185 (10th Cir. 2001) (citations omitted). Plaintiff relies on the first component – arbitrary conduct – which occurs when a union's "behavior is so far outside a wide range of reasonableness as to be irrational." Schwartz, 264 F.3d at 1185.

The "perfunctory" handling of a meritorious grievance can rise

_____

v. Int'l. Union, United Auto., Aerospace, and Agr. Impl. Workers of Am., 451 U.S. 679 (1981). None of the parties claim that plaintiff should have invoked such procedures in the instant case.

to the level of arbitrary conduct. <u>Vaca</u>, 386 U.S. at 190 ("we accept the proposition that a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion"). This occurs if the union acts "without concern or solicitude" or gives a claim only "cursory attention," instead of making a prompt and diligent effort to get a grievance heard. <u>Webb</u>, 155 F.3d at 1240. For example, in <u>Webb</u> the union hurt the plaintiff's reinstatement chances by failing to file a grievance it believed to be meritorious, failing to follow its regular grievance practice, misleading the plaintiff by telling him that his presence at the hearing was not needed and then misleading the grievance panel as to why plaintiff was absent, and disparaging plaintiff in front of the grievance panel and contradicting his account of events. <u>Webb</u>, 155 F.3d at 1240, n.14.  <u>See also</u> <u>Walker v. Consol. Freightways, Inc.</u>, 930 F.2d 376, 382 (4th Cir. 1991) ("Malicious or egregious delay in pursuing plaintiff's rights can violate the <u>Vaca</u> proscription."); <u>Ruzicka v. General Motors Corp.</u>, 649 F.2d 1207, 1211-12 (6th Cir. 1981) (union's conduct is arbitrary when, without justification or excuse, it makes no decision as to the merits of an individual's grievance and merely allows it to expire). But a plaintiff claiming breach of the union's duty must demonstrate that the union's actions constitute more than "mere errors in judgment" or "mere negligence." <u>Hinkley v. Roadway Exp., Inc.</u>, 249 Fed.Appx. 13, 17, 2007 WL 2709936 (10th Cir. 2007) [citations omitted].

Any substantive examination of a union's performance must also be "highly deferential," recognizing the wide latitude the union needs in dealing with its members and performing its role. <u>See Air Line Pilots Ass'n., Int'l. v. O'Neill</u>, 499 U.S. 65, 78 (1991). Moreover,

an employee does not possess any absolute right to have a grievance taken to arbitration, and a union does not breach its duty merely because it decides to settle a grievance short of arbitration. Vaca, 386 U.S. at 190-91.

Plaintiff's claim appears to be based entirely on what he characterizes (in a sur-reply brief) as "a flagrant disregard of the grievance procedure time limits set forth in the collective bargaining agreement." Doc. 23-1 at 5. But the Amended Complaint lacks a sufficient factual basis for such a conclusion. It is true the CBA contains fairly narrow time limits and a "time is of the essence" provision stating that a grievance "will automatically be decided against the party who fails to comply with such limits,..." (Doc. 14-1 at p.38). But there is an exception when "an extension of time limits is mutually agreed upon in writing by the parties." The complaint does not address whether any extensions of time were agreed upon by the parties. Nor does it set forth any facts about the normal course of grievances or common delays in the process, such as delays caused by a need for further investigation.

In addition to an absence of key facts, several allegations in the amended complaint tend to refute the claim that the union treated plaintiff's grievances in a perfunctory manner. The allegations show that between January and April of 2012, union representatives expressed a continuing intent to pursue plaintiff's grievances, they took various steps to further the grievance process, and they communicated with plaintiff about the status of the grievances. Plaintiff's factual allegations essentially stop in April of 2012 when the union representative told plaintiff "to be patient" as she dealt

with Human Resources over Cessna's new claim of unexcused absences. Neither the original complaint filed in June of 2012 nor the amended complaint filed in August of 2012 discuss the status of the grievances or the union's conduct (or lack thereof) after April of 2012. The complaint indicates that some of the delay complained of was caused by Cessna's need for investigation, a delay to which the union apparently acceded. (See Doc. 28, ¶¶82-85).

Cessna represents that plaintiff's grievance was moved to Step 4 by early August 2012 and that plaintiff "will soon be able to bring his claim in arbitration." (Doc. 22 at 4). The union has likewise asserted that the grievances "have not been closed and are still in progress." (Doc. 36 at 1). The complaint is silent on these matters. Clearly, plaintiff's grievances have been delayed, but there are no allegations that either party to the CBA has claimed a violation of the agreement's time limits. Significantly, there are also no facts alleging that the claimed breach of duty by the union has in any way affected the integrity of the grievance process or precluded plaintiff's grievances. Cf. Webb, 155 F.3d at 1229 (elements of claim include showing that the breach affected the integrity of the grievance process); Clayton v. Int'l. Union, United Auto., Aerospace, and Agr. Impl. Workers of Am., 451 U.S. 679, 691, n.18 (1981) (parties' stipulation that grievance could not be revived was consistent with the time limitations of CBA).

It is incumbent upon the plaintiff to allege sufficient facts "to raise a right to relief above the speculative level...." Twombly, 500 U.S. at 555. Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint

has alleged — but it has not "shown" — that the pleader is entitled to relief. <u>Iqbal</u>, 556 U.S. at 679. That is the case here. Plaintiff's facts raise the possibility that the union has failed to process the grievances in accordance with the CBA time limits. But the amended complaint leaves out material allegations, including the status of the grievances as of the filing of the amendment, the union's conduct after April 2012, and the cause or asserted reason for any delays. The mere fact of a delay, standing alone, does not show the union breached its duty to fairly represent plaintiff. <u>See</u> <u>e.g.</u>, <u>Balderas v. Cessna Aircraft Corp</u>., 2003 WL 1342942, *6 (D. Kan., Mar. 12, 2003) ("[t]he fact that arbitration was delayed does not, on its own, justify finding a breach of the duty of fair representation"); <u>Dobrski v. Ford Motor Co.</u>, 698 F.Supp.2d 966, 991 (N.D. Ohio 2010) (without additional information, alleging that a union did not sufficiently pursue a grievance is "legally insufficient to support a claim for breach of the duty of fair representation"); <u>Smith v. United Steel Workers of Am.</u>, 2007 WL 2477345, *10 (S.D. W.Va., Aug. 29, 2007) ("While not ideal, the six and a half month period between step three and step four ... [does] not rise to the level of wholly irrational, perfunctory, or otherwise arbitrary conduct necessary for a successful breach of the duty of fair representation claim."); <u>Mathis v. CWA Local Union 4320</u>, 2011 WL 3497189, *5 (S.D. Ohio, Aug. 9, 2011) (allegations that union took no action on grievance for three months and that delay was unwarranted failed to state claim for breach of duty).

The court agrees with defendants that plaintiff has failed to allege sufficient facts to show the union has breached its duty of

fair representation. As such, plaintiff's failure to exhaust the grievance/arbitration process is not excused. Counts 2 and 3 will be dismissed without prejudice for failure to exhaust the contractual remedies of the CBA.


**Count 5 - Breach of Contract**

Cessna argues Count 5 should be dismissed because it is entirely "duplicative" of Count 1. Count 5 alleges a breach of the parties' 2008 Settlement Agreement, in which Cessna promised to comply with Kansas law in all aspects of plaintiff's continued employment. Count 5 alleges that Cessna breached that promise by violating plaintiff's rights under the Kansas workers compensation laws. Count 1 separately seeks to recover under Kansas tort law for the same violations of workers compensation rights.

Defendant is correct insofar as it suggests plaintiff will not be able to obtain duplicate recovery for the same injury by asserting different legal theories. See Aquilar v. Balano, 241 P.3d 601 (Table), 2010 WL 4668333, *4 (Kan.App. 2010) (double recovery not permitted for the same injury based on two theories). And it would make little sense to submit both claims to a jury, given that to prevail on Count 5 plaintiff would have to prove all the elements of Count 1 plus an agreement not to violate the workers compensation laws. See Hamdy v. County of Niagara, 2007 WL 295325 (W.D.N.Y., Jan. 30, 2007) ("It would be cumulative, a waste of time and too confusing to submit essentially the same claim to the jury based upon two different theories.") But Cessna has not shown that recovery under a breach of contract theory is precluded as a matter of law or that dismissal of the claim is

necessarily required.[5] The motion to dismiss Count 5 will therefore be denied. Cf. Dobyns v. United States, 91 Fed.Cl. 412, 421 (Fed.Cl. 2010) (settlement agreement by design afforded plaintiff a contractual remedy should ATF, in the future, not comply with all laws regarding or affecting his employment). But see McGee v. Dist. of Columbia, 646 F. Supp. 2d 115, 121 (D.D.C. 2009) ("Courts typically dismiss contract claims that duplicate contemporaneously-filed discrimination or retaliation claims.").

**Count 6 - ADA claim**

Count 6 of the amended complaint alleges that plaintiff was terminated in violation of the Americans with Disabilities Act (ADA). The complaint's allegations relating to this claim more or less consist of the statutory language. Cessna contends plaintiff has not plausibly alleged enough facts to show that he has a disability or that Cessna regarded him as having a disability.

The ADA, 42 U.S.C. §§ 12101-12213, prohibits covered employers from discriminating against qualified employees on the basis of a disability. § 12112(a). "Disability" means, with respect to an individual: (a) a physical or mental impairment that substantially limits one or more major life activities of such individual; (b) a record of such impairment; or (c) being regarded has having such an impairment. § 12102(1)(A).

---

[5] Unlike Foodbrands Supply Chain Servs., Inc. v. Terracon Inc., 2003 WL 23484633, *6 (D. Kan. 2003), these two claims are not based entirely on the same set of facts. The terms of the 2008 Settlement Agreement show that it was designed to supplement or reinforce plaintiff's existing rights under Kansas law by offering a contractual guarantee.

The ADA (as amended in 2008)[6] provides that a "major life activity" includes not only such things such as breathing, walking, talking and working, but also the operation of a major bodily function, including the immune, digestive, respiratory, endocrine, musculoskeletal and other systems. The term "substantially limits" is not meant to be a demanding standard. See 29 C.F.R. §1630.2(j). An impairment qualifies as a disability if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population, even if it does not significantly or severely restrict the individual from performing the activity. The determination is ordinarily to be made without regard to ameliorative measures, including medication. An impairment that is episodic is considered a disability if it would substantially limit a major life activity when active. §1630(j).

As Cessna points out, plaintiff basically concedes the amended complaint does not identify any major life activity or major bodily function that is substantially limited by an impairment. (Doc. 38 at 9). He argues such facts are unnecessary because the complaint elsewhere mentioned that he was diagnosed with diabetes. Plaintiff says the regulations identify diabetes and its effect on endocrine function as the type of impairment that "will, in virtually all cases, result in coverage under the ADAAA." (Doc. 38 at 9). He makes a similar argument with respect to other diagnosed conditions mentioned

---

[6] The ADA Amendments Act of 2008 was passed "with the explicit purpose of rejecting certain standards and reasoning of Supreme Court opinions regarding interpretation of the ADA and 'reinstating a broad scope of protection to be available under the ADA.'" Allen v. SouthCrest Hosp., 455 Fed.Appx. 827, 834, 2011 WL 6394472 (10th Cir. 2011).

-18-

in the complaint.

The regulations do provide that certain impairments, including diabetes, will "in virtually all cases" result in a finding of a disability, making the necessary individualized assessment "particularly simple and straightforward." 29 C.F.R. 1630.2(3). If plaintiff is relying on such an impairment and its substantial limitation on his endocrine function, he merely has to allege as much in the complaint. But the defendant should not have to guess at the basis for the claim of disability discrimination. Kansas Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1215 (10th Cir. 2011) (Twombly pleading standard ensures that a defendant is placed on notice of his alleged misconduct).

Parroting the statutory language without any supporting facts [Doc. 28 at ¶¶ 114-117] is exactly what the Supreme Court had in mind when it said the complaint must do more than give "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. Detailed facts are not required, but a valid claim must contain a showing of an entitlement to relief. Plaintiff's unexplained allegations that he has an impairment that substantially limits a major life activity, or a record of such an impairment, fail to meet this standard. Sprague v. Kasa Indus. Controls, Inc., 250 F.R.D. 630, 633 (D.Kan. 2008) (plaintiff alleged that as a result of a back injury she "has an impairment which substantially limits one or more major life activities, a record of such an impairment, and plaintiff was regarded by defendant as having such an impairment. This is no more than a formulaic recitation of the definition of disability under the ADA that the Twombly court stated 'will not do.'"); Mora v. University

of Texas Southwestern Medical Center, 469 Fed.Appx. 295, 297-298, 2012 WL 745101, 2 (5th Cir. 2012) (plaintiff did not specify which of her life activities is substantially limited; "[t]his is fatal to stating a valid claim for relief.").

Plaintiff's additional "regarded as" disabled claim does not necessarily require him to allege or show that he has an impairment or that it limits a major life activity. But it does require a showing that Cessna subjected him to a prohibited action "because of an actual or perceived impairment that is not both 'transitory and minor.'" 29 C.F.R. §1630.2(g)(1)(iii). Plaintiff's "regarded as" allegations, which also merely repeat the statutory language, do not adequately state the factual basis for this claim. Smith v. Regional Plan Ass'n, Inc., 2011 WL 4801522, 5-6 (S.D.N.Y., Oct. 7, 2011) (merely alleging that plaintiff's employer "perceived Plaintiff as a disabled person" not sufficient under Twombly).

Plaintiff has requested leave to amend the complaint if the court finds his ADA allegations insufficient. (Doc. 38 at 12). Because plaintiff's brief shows that the inadequacies in Count 6 could be cured, the court will grant his request for leave to amend the complaint.[7]

---

[7] In light of the showing made by plaintiff in his brief, the absence of unfair surprise to the defendants, and the preference for resolution of claims on the merits, the court will consider plaintiff's request as a motion for leave to amend and will excuse plaintiff's failure to comply with D. Kan. R. 15.1. Cf. Calderon v. Kansas Dept. of Soc. and Rehab. Servs., 181 F.3d 1180, 1186-87 (10th Cir. 1999).

**Conclusion**

Cessna's and the International Association of Machinists' Motions to Dismiss (Docs. 13, 33, and 35) are GRANTED IN PART and DENIED IN PART. Counts 2 and 3 of the Amended Complaint are dismissed without prejudice for failure to exhaust remedies under the CBA. The motions to dismiss are denied as to Count 5.

Cessna's motion to dismiss for failure to state a claim is granted as to Count 6 of the Amended Complaint, but plaintiff is granted 14 days from the filing of this order to file an amended complaint curing the pleading deficiencies in Count 6.

Plaintiff's Motion for Leave to file Surreply (Doc. 23) is granted. The court has considered the surreply in this ruling.

Plaintiff's Motion to Consolidate (Doc. 40) is denied as moot.


IT IS SO ORDERED.

Dated this 3rd day of January 2013, at Wichita, Kansas.


s/Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE