# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| RONALD K. KINCHION, | ) |
| Plaintiff, | ) **CIVIL ACTION ACTION** |
| v. | ) No. 12-1203-MLB |
| CESSNA AIRCRAFT COMPANY, | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This case comes before the court on cross motions for summary judgment. (Docs. 82, 83). The motions have been fully briefed and are ripe for decision. (Docs. 84, 85, 86, 88, 89). Plaintiff's motion is denied and Cessna's motion is granted for the reasons herein.

## I. Facts[1]

Plaintiff Ronald Kinchion worked approximately 15 years at Cessna as a small-parts finish painter. Plaintiff worked in Department 28, Paint and Processing, prior to his termination.

### Plaintiff's Medical History at Cessna

On May 11, 2007, plaintiff filed a suit against Cessna alleging disability discrimination and other claims. Plaintiff and Cessna entered into a settlement agreement where Cessna agreed to comply with Kansas law.

---

[1] Plaintiff's response failed to controvert the facts as required by D. Kan. 56.1. Therefore, Cessna's statement of facts is deemed uncontroverted.

In October and November 2008, plaintiff requested intermittent FMLA leave which was approved by Cessna. On February 1, 2011, plaintiff again requested intermittent leave and the request was granted. On February 11, 2011, plaintiff reported a cyst on his right wrist and, subsequently, filed a worker's compensation claim regarding the cyst.

On March 28, 2011, Kim Chacon, an ergonomist at Cessna, conducted an ergonomic survey of plaintiff in order to determine the cause of his pain. During the survey, plaintiff stated that he prefers to paint with his right hand but is able to paint with both hands. Plaintiff informed Chacon that he had pain in both hands and wrists. Chacon then observed plaintiff while he worked and noted that plaintiff constantly switched fingers for the trigger and used both hands to paint.

On April 21, 2011, plaintiff's doctor placed restrictions on his right hand which stated that plaintiff could paint occasionally with his right hand. The doctor did not restrict work activity with plaintiff's left hand.

On September 29, 2011, plaintiff had surgery on his right hand to correct a work-related injury. On October 3, plaintiff returned to work with restrictions. Plaintiff was prohibited from painting with his right hand but was able to paint with his left hand for up to two hours.

### Disciplinary Procedure at Cessna

The disciplinary procedure at Cessna contains a maximum of five steps. At step 1, employees are given a verbal warning. At step 2, employees are given a written reprimand. On step 3, an employee is

given a warning in lieu of suspension or the decision maker may skip the warning step and go directly to step 4, a three-day suspension. The final step, number 5, is termination. In this case, Kinchion received the benefit of all five steps. In assessing which stage of the disciplinary procedure an employee is at, the employee's discipline over the previous nine months is taken into account.

Supervisors at Cessna are referred to as "Value Stream Leaders" (VSLs). VSLs have the authority and discretion to discipline employees, but they also work with Cessna's Human Resources Department ("HR") on employee discipline issues. VSLs ensure that the employees under his or her supervision are generating work-product that meets Cessna's quality expectations. Employees who fail meet quality expectations may be subjected to discipline up to and including termination of their employment.

### Plaintiff's Discipline History

On April 27, 2011, VSL Davis gave plaintiff a verbal warning about the poor quality of his work after determining that the paint applied by plaintiff was too thin on approximately 40 parts.

On August 18, 2011, VSL Simmons assigned plaintiff to paint two parts by using the "fill and drain" method. Plaintiff had knowledge of this method and had painted with the method in the past. Plaintiff, however, refused to paint the parts and claimed that he did not know how to do it. Simmons asked other painters to demonstrate the method to plaintiff. Winesberry, the crew chief, explained the method to plaintiff and plaintiff painted the parts applying an excessive amount of primer on the outside of the parts. Simmons determined that the parts would not pass inspection and had to be sent

-3-

offsite to be stripped and reprocessed.

Simmons investigated the incident to determine the appropriate action. After Simmons concluded that plaintiff had knowledge of the painting method and reviewed plaintiff's verbal warning in April 2011, Simmons gave Kinchion a written reprimand on August 22. Plaintiff objected to the reprimand and filed a grievance with the union. After negotiations, Cessna and the union agreed to allow the reprimand on plaintiff's record for only two months, rather than the normal time period of nine months.

On October 6, 2011, Simmons assigned plaintiff to work in the painting booth. At this time, plaintiff was restricted by his physician from the use of his right hand to paint but was allowed to paint with his left hand. Plaintiff, however, objected to painting in the booth and stated that he could not paint with his left hand. Simmons told plaintiff that she expected him to work in the both for two hours as allowed by his restrictions. Ultimately, plaintiff worked in the booth and painted the parts. After reviewing the work, Simmons determined that plaintiff had applied an excessive amount of paint which caused drips and "blisters." The parts were not usable and had to be sanded down and repainted.

Simmons investigated the incident for potential disciplinary action, reviewed plaintiff's file and spoke with other VSLs at Cessna. Simmons also checked with Health Services to determine the history of plaintiff's work restrictions. Simmons concluded that plaintiff was able to paint with his left hand and that plaintiff did not like to work in the painting booth. On October 7, 2011, Simmons gave plaintiff a warning in lieu of suspension.

On that same day, Simmons again assigned plaintiff to work in the painting booth and instructed Winesberry to observe and coach plaintiff. While observing, Winesberry told plaintiff that he was applying too much paint. Plaintiff did not turn the paint gun down and instead began applying more paint to the parts. Winesberry repeated her request to turn down the gun and plaintiff did not respond. Winesberry left the area and notified Simmons that plaintiff was severely over-painting the parts. By that time, plaintiff had over-painted eighteen out of twenty parts which had to be reworked. Simmons reported the incident to HR.

Chris Manuel, an HR Manager, investigated the incident by reviewing plaintiff's file and interviewing various Cessna employees. Manuel also interviewed plaintiff who claimed that he did not know how to paint with his left hand. Plaintiff's statement, however, conflicted with other reports that indicated plaintiff could paint with his left hand. Manuel concluded that plaintiff did know how to paint with his left hand and therefore, disciplinary action was appropriate because of the deficient quality of plaintiff's work. Simmons also concluded that plaintiff's actions were intentional. Plaintiff was given a three-day suspension, which moved him to step 4 of the disciplinary procedure.

On December 19, plaintiff was assigned to paint "gas shocks." These parts are visible to the client and must be painted perfectly. The parts should be hung up or propped up while painting and cannot be placed in the oven. The parts were designated a "priority 2" which meant that they were to be worked on immediately. Plaintiff improperly placed the parts in the oven and painted the parts on a

rack which resulted in the parts being stuck to the shelving unit. On December 20, a co-worker told plaintiff that the parts would be rejected by quality control. Plaintiff did not immediately repaint the parts but decided to leave the parts to fix the next day. The parts ultimately had to be reworked.

On December 21, Chuck Miller, a crew chief at Cessna, informed Manuel of plaintiff's unacceptable painting. Manuel investigated the incident. In determining whether to discipline plaintiff, Manuel reviewed plaintiff's file which included an investigation by Jennifer Grindstaff, an HR Manager. Grindstaff conducted the investigation to determine whether plaintiff was being subjected to unfair scrutiny by Simmons. After interviewing ten employees in plaintiff's area, Grindstaff concluded that Simmons treated all employees the same and that plaintiff was repeatedly disrespectful to Simmons. Additionally, Grindstaff reported that several employees felt that plaintiff made the environment "toxic." (Doc. 84 at 18). Manuel relied on Grindstaff's report and concluded that disciplinary action was appropriate because of the deficient quality of plaintiff's work. Simmons agreed with Manuel's conclusion. Because plaintiff was on step 4, the next step of the procedure was termination.

Manuel and Simmons jointly made the decision to terminate plaintiff's employment and received approval from HR.

Plaintiff filed this action against Cessna alleging that Cessna retaliated against him for filing a worker's compensation claim, interfered with his rights under the Family Medical Leave Act (FMLA), violated the Americans with Disabilities Act (ADA) and breached the 2008 settlement agreement. Both Cessna and plaintiff move for summary

judgment on all claims.

## II. Summary Judgment Standard

The rules applicable to the resolution of this case, now at the summary judgment stage, are well-known and are only briefly outlined here. Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if sufficient evidence exists so that a rational trier of fact could resolve the issue either way and an issue is "material" if under the substantive law it is essential to the proper disposition of the claim. Adamson v. Multi Community Diversified Svcs., Inc., 514 F.3d 1136, 1145 (10th Cir. 2008). When confronted with a fully briefed motion for summary judgment, the court must ultimately determine "whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). If so, the court cannot grant summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

## III. Pro Se Standard

Before analyzing Cessna's motion for summary judgment, the court notes plaintiff is not represented by counsel. It has long been the rule that pro se pleadings, including complaints and pleadings connected with summary judgment, must be liberally construed. See Hall v. Bellmon, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991); Hill v. Corrections Corp. of America, 14 F. Supp.2d 1235, 1237 (D. Kan. 1998).

This rule requires the court to look beyond a failure to cite proper legal authority, confusion of legal theories, and poor syntax or sentence construction. See Hall, 935 F.2d at 1110. Liberal construction does not, however, require this court to assume the role of advocate for the pro se litigant. See id. Plaintiff is expected to construct his own arguments or theories and adhere to the same rules of procedure that govern any other litigant in this district. See id.; Hill, 14 F. Supp.2d at 1237.

**IV. Analysis**

    **A. Workers' Compensation**

Plaintiff asserts that he was terminated in retaliation for filing a workers' compensation claim. The elements for a claim of retaliatory discharge are:

> (1) The plaintiff filed a claim for workers compensation benefits or sustained an injury for which he or she might assert a future claim for such benefits; (2) the employer had knowledge of the plaintiff's workers compensation claim injury; (3) the employer terminated the plaintiff's employment; and (4) a causal connection existed between the protected activity or injury and the termination.

Rebarchek v. Farmers Co-op. Elevator, 272 Kan. 546, 553-54, 35 P.3d 892, 898-99 (2001).

After plaintiff establishes a prima facie case, the burden shifts to Cessna to show an articulate, non-retaliatory reason for the discharge. Bausman v. Interstate Brands Corp., 252 F.3d 1111, 1116 (10th Cir. 2001). "If the employer meets this burden, the burden shifts back to the plaintiff but the plaintiff must show clear and convincing evidence that he or she was terminated in retaliation for exercising rights under the Workers' Compensation Act." Id.

The first three elements are not in dispute. Plaintiff filed a workers' compensation claim in February 2011 and was terminated in January 2012. To establish the fourth element, a plaintiff typically shows proximity in time between the claim and discharge. Close temporal proximity between a workplace injury or the filing of a workers compensation claim and the adverse employment action may be "highly persuasive evidence of retaliation." White v. Tomasic, 31 Kan. App.2d 597, 602, 69 P.3d 208, 212 (2003) (internal citations omitted). In this case, there was an eleven-month delay between plaintiff's claim and his firing. The court finds that the delay between plaintiff's claim and his termination is not sufficient to establish a causal connection. Anderson v. Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir. 1999)(twelve weeks is not sufficient). Plaintiff has not offered any additional circumstantial evidence to show that he was fired because he filed a workers' compensation claim. Therefore, summary judgment on this claim is granted in favor of Cessna.

Even if the court determined that plaintiff met his prima facie case, plaintiff cannot establish retaliation under the burden-shifting approach set forth in Rebarchek. Cessna has established by sufficient evidence that its non-retaliatory legitimate reason for terminating plaintiff was his failure to perform his job satisfactorily. Since Cessna has carried its "burden of production, the presumption raised by the prima facie case is rebutted, [and] drops from the case." Robinson v. Wilson Concrete Co., 913 F. Supp. 1476, 1483 (D. Kan. 1996). The burden now returns to plaintiff.

Plaintiff has simply failed to provide an adequate response.

-9-

"Timing alone, without any other evidence of retaliation, does not comport with the standard of proof for a retaliatory discharge claim in Kansas." Id. at 1484.

Cessna's motion for summary judgment on plaintiff's claim for workers' compensation retaliatory discharge is therefore granted and plaintiff's motion is denied.

**B. FMLA Claims**

Liberally construing plaintiff's allegations, plaintiff brings claims for FMLA interference and retaliation pursuant to 29 U.S.C. § 2615(a)(1) and (a)(2), respectively. The FMLA affords a qualified employee twelve weeks of unpaid leave each year for serious health problems that prevent the employee from performing his job. 29 U.S.C. § 2612(a)(1)(D).

An employee may recover damages against the employer when it has interfered with the right to medical leave or reinstatement following medical leave. 29 U.S.C. § 2615; Smith v. Diffee Ford-Lincoln-Mercury, Inc., 298 F.3d 955, 960 (10th Cir. 2002).

> To make out a prima facie claim for FMLA interference, a plaintiff must establish (1) that he was entitled to FMLA leave, (2) that some adverse action by the employer interfered with his right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of his FMLA rights.

Jones, 427 F.3d at 1319.

> To state a prima facie case of retaliation, [a plaintiff] must show that: (1) he engaged in a protected activity; (2) [the defendant] took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action.

Metzler v. Federal Home Loan Bank of Topeka, 464 F.3d 1164, 1171 (10th Cir. 2006).

-10-

## Interference

Plaintiff alleges that Cessna interfered with his right to reinstatement due to his excessive FMLA absences. (Doc. 64 at ¶ 84). "In order to satisfy the second element of an interference claim, the employee must show that [he] was prevented from taking the full 12 weeks' of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave." Campbell v. Gambro Healthcare, Inc., 478 F.3d 1282, 1287 (10th Cir. 2007). The facts in this case do not support any of those scenarios. Plaintiff's request for leave was granted and he clearly exhausted the full twelve weeks of leave available to him. (Doc. 84, exh. 1F at 5). Plaintiff also cannot show that he was denied reinstatement following leave because he was not on FMLA leave at the time of his termination. Therefore, plaintiff has failed to establish that Cessna interfered with his right to take FMLA leave. Cessna's motion for summary judgment on this claim is granted and plaintiff's motion is denied.

## Retaliation

With respect to the retaliation claim, Cessna argues that plaintiff cannot establish a causal connection between plaintiff's leave and the termination because plaintiff's leave occurred more than three years ago. (Doc. 84 at 26-28). Cessna is incorrect, plaintiff was approved for intermittent leave in 2011 and did take FMLA leave as late as October 2011, when it was exhausted. (Doc. 84, exh. 1F). Notably, the disciplinary actions taken by Cessna coincide with plaintiff's FMLA leave on at least two occasions. Id. at 3-4. Therefore, a close temporal proximity exists between plaintiff's leave and his disciplinary actions. Nealey v. Water District No. 1 of

Johnson County, No. 08-3144, 2009 WL 1303161 (10th Cir. May 12, 2009).

The burden now shifts to Cessna to establish a legitimate non-discriminatory reason for plaintiff's termination. As stated previously, Cessna has satisfied its burden to articulate a legitimate reason for its actions. As a result, plaintiff must show pretext. Although temporal proximity is to be considered in determining whether Cessna's explanation is a pretext for retaliation, the Tenth Circuit has refused to allow even "very close temporal proximity to operate as a proxy for th[e] evidentiary requirement" that plaintiff demonstrate pretext. Annett v. Univ. of Kan., 371 F.3d 1233, 1241 (10th Cir. 2004); Medina v. Income Support Div., 413 F.3d 1131, 1138 (10th Cir. 2005) ("[Temporal proximity] is not alone sufficient to defeat summary judgment.") (quotations omitted). "To raise a fact issue of pretext," plaintiff must "present evidence of temporal proximity plus circumstantial evidence of retaliatory motive." Metzler v. Federal Home Loan Bank of Topeka, 464 F.3d 1164, 1172 (10th Cir. 2006). Here, plaintiff offers no circumstantial evidence to support a finding of retaliatory motive.

Therefore, Cessna's motion for summary judgment is granted and plaintiff's motion is denied.

**C. ADA Discrimination**

The framework articulated in McDonnell Douglas controls the analysis of plaintiff's disability discrimination claim. See Johnson v. Weld County, Colo., 594 F.3d 1202, 1217 (10th Cir. 2010). Accordingly, plaintiff must first establish a genuine issue of material fact exists on the following three elements: "(1) [he] is a disabled person as defined by the ADA; (2) [he] is qualified, with or

without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) [his] employer discriminated against [him] because of [his] disability." Id.

In the amended complaint, plaintiff has alleged that he has diabetes, cardiac dysrhythmia, mitral valve prolapse, irritable bowel syndrome and diabetic neuropathy. (Doc. 64 at 6). The regulations provide that diabetes will, "in virtually all cases" result in a finding of a disability, making the necessary individualized assessment "particularly simple and straightforward." 29 C.F.R. 1630.2(3). Plaintiff, however, offers no evidence of his symptoms or his conditions. The medical records in this case concern plaintiff's surgery and limitations in his hands. Therefore, plaintiff has failed to establish that he is a disabled person as defined by the ADA.

Moreover, plaintiff has not produced any evidence to satisfy the third element of ADA discrimination. "[T]o establish the third element of a prima facie case of disability discrimination, the plaintiff must show that [he] was terminated because of [his] disability, or that the employer terminated the plaintiff 'under circumstances which give rise to an inference that the termination was based on [his] disability.'" Butler v. City of Prairie Village, Kan., 172 F.3d 736, 748 (10th Cir. 1999) (citing Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997)). The third prong of the test does not impose an "onerous" burden, but it also is "not empty or perfunctory." Morgan, 108 F.3d at 1323–24. Plaintiff is required "to present some affirmative evidence that disability was a determining factor in the employer's decision." Id.

Plaintiff has failed to offer any affirmative evidence that his

-13-

diabetes, or the other conditions listed in the amended complaint, were determining factors in Cessna's employment decision. See Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997). Accordingly, plaintiff has not established the third element of his prima facie case and summary judgment is appropriate on this basis, regardless of whether plaintiff has a "disability" within the meaning of the ADA.

Cessna's motion for summary judgment on plaintiff's ADA discrimination claim is granted and plaintiff's motion is denied.

### D.  Breach of Contract

Finally, plaintiff alleges that Cessna breached the 2008 settlement agreement because it has not complied with Kansas law. In order to state a claim for breach of contract under Kansas law, plaintiff must establish the following elements: (1) the existence of a contract between the parties; (2) consideration; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) defendant's breach of the contract; and (5) that plaintiff suffered damage caused by the breach. Britvic Soft Drinks, Ltd. v. ACSIS Techs., Inc., 265 F. Supp.2d 1179, 1187 (D. Kan. 2003).

Plaintiff has wholly failed to introduce any evidence of a breach of the settlement agreement. Therefore, Cessna's motion for summary judgment on this claim is granted and plaintiff's motion is denied.

## V. Conclusion

Cessna's motion for summary judgment is granted.  (Doc. 83). Plaintiff's motion for summary judgment is denied.  (Doc. 82). Plaintiff's motion to amend his complaint (Doc. 79) is denied for the reasons stated in this court's January 4, 2013, order.  (Doc. 61).

A motion for reconsideration of this order is not encouraged.

-14-

Any such motion shall not exceed 3 double-spaced pages and shall strictly comply with the standards enunciated by this court in <u>Comeau v. Rupp</u>, 810 F. Supp. 1172, 1174 (1992). The response to any motion for reconsideration shall not exceed 3 double-spaced pages. No reply shall be filed.

   IT IS SO ORDERED.
   Dated this <u>  12th  </u> day of September 2013, at Wichita, Kansas.


                                        <u>s/ Monti Belot                </u>
                                        Monti L. Belot
                                        UNITED STATES DISTRICT JUDGE